UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

NICHOLAS POPLARDO,

       Plaintiff,

vs.                                Case No.  3:06-cv-1101-J-MCR

MICHAEL J. ASTRUE, Commissioner of the
Social Security Administration,[1]

       Defendant.
_____/

## MEMORANDUM OPINION AND ORDER[2]

This cause is before the Court on Plaintiff's appeal of an administrative decision denying his application for Supplemental Security Income. The Court has reviewed the record, the briefs and the applicable law. For the reasons set forth herein, the Commissioner's decision is **REVERSED** and remanded for further proceedings.

## I.    PROCEDURAL HISTORY

Plaintiff filed an application for Supplemental Security Income on May 4, 2004 (Tr. 55-58), alleging disability since June 1, 2003. (Tr. 55). The Social Security Administration ("SSA") denied this application initially and on reconsideration. (Tr. 24-34). Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ") on May 9, 2006. (Tr. 35-38, 45). On August 25, 2006, the ALJ issued a

---

[1]  Michael J. Astrue is substituted for his predecessor, Jo Anne B. Barnhart, as Commissioner of the Social Security Administration. See FED. R. CIV. P. 25(d)(1),

[2]  The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 15).

decision finding Plaintiff not disabled.  (Tr. 16-23a).  On October 18, 2006, Plaintiff filed

a Request for Review by the Appeals Council.  (Tr. 8-9).  The Appeals Council denied

Plaintiff's request for review, thus making the ALJ's August 25, 2006 decision the final

decision of the Commissioner.  (Tr. 5-7).  Plaintiff timely filed his Complaint in the U.S.

District Court on December 15, 2006.   (Doc. 1).

## II.   NATURE OF DISABILITY CLAIM

### A.   <u>Basis of Claimed Disability</u>

Plaintiff claims to be disabled since June 1, 2003 due to avascular necrosis of the

hip, degenerative disk disease in his lower thoracic spine, and associated physical

impairments including pain.  (Doc. 17).

### B.   <u>Summary of Evidence Before the ALJ</u>

Plaintiff was 39 years of age on the date of the ALJ's decision.  He has a tenth

grade education with past relevant work experience as a meat distributor (stores

laborer), pizza baker, and hot dog vendor.  (Tr. 74-77).

#### i.   Medical Evidence

Plaintiff's medical history includes injuries sustained in an automobile accident.

(Tr. 183).  Plaintiff sought treatment for these injuries and diagnostic procedures

ultimately revealed several underlying pathologies related to his left hip joint and lower

thoracic spine.  (Tr. 135-41, 177, 180).  According to Plaintiff, these physical

pathologies, and the concomitant pain, have incapacitated him to the extent that he is

no longer able to engage in substantial gainful activity ("SGA").  (Tr. 269).  The specific

findings of Plaintiff's medical providers and non-examining consultants are detailed

below.

Plaintiff initially sought treatment for hip and back pain in the emergency room at Baptist Hospital on June 8, 2003. (Tr. 149). The physician detected no readily apparent serious injury, and instructed Plaintiff to return if his symptoms did not subside. Plaintiff again visited the emergency room on June 11, 2007 complaining of similar symptoms, and x-rays of the pelvis, left hip and lumbar spine revealed degenerative disk changes but no evidence of an acute fracture. (Tr. 142). The physician recommended that Plaintiff follow-up with Dr. Czerkawski. (Tr. 140).

Pursuant to this recommendation, Plaintiff visited Dr. Czerkawski on June 16, 2003. (Tr. 183-88). Dr. Czerkawski reported Plaintiff's initial low back pain has improved, but that Plaintiff was using crutches due to "pain on weight bearing." (Tr. 183). He ordered a magnetic resonance imaging ("MRI") procedure, which was performed on June 18, 2003. (Tr. 180). The MRI showed:

> [F]airly extensive bone marrow edema involving the femoral head, neck and a portion of the intertrochanteric region. Additionally, a crescentic shaped area of signal abnormality is identified in the anterosuperior aspect of the femoral head abutting the articular surface. The appearance is suspicious for avascular necrosis, although a focal osteochondral defect is a consideration. . . . A moderate sized hip joint effusion is identified with some edema in the adjacent muscles and soft tissues in the intertrochanteric region. This finding is nonspecific and could be related to the recent trauma.

(Tr. 180). Dr. Surratt – the reading radiologist on the procedure – discussed the results with Dr. Czerkawski. (Tr. 180-81).

On June 23, 2003, Plaintiff again visited Dr. Czerkawski whose assessment was

compatible with Dr. Surratt's reading of the MRI, noting an irregularity consistent with either occult fracture or avascular necrosis, edema and joint effusion.[3] (Tr. 177).  Dr. Czerkawski outlined a treatment plan which included no weight bearing on the left hip until further assessed by an orthopedic surgeon, no work for one month, and a recommendation for a second opinion by either Dr. Crenshaw or Dr. Longenecker.  (Tr. 177).

On July 7, 2003, Plaintiff presented to Dr. Lancaster for treatment, at which point Dr. Lancaster opined: "Reasonably [Plaintiff] had the avascular necrosis present prior to the accident but was asymptomatic and the actual accident has aggravated this and either caused a subchondral fracture or disrupted the surrounding tissue, such that he is now symptomatic."  (Tr. 168).  Dr. Lancaster further stated that if these symptoms did not abate naturally, that "either a core decompression or more reasonably a total hip replacement may be in order."  (Tr. 168).  Additionally, Dr. Lancaster indicated in his physical examination that Plaintiff exhibited pain with internal/external rotation and flexion to 110 degrees.  (Tr. 166).

On August 25, 2003, Dr. Lancaster evaluated Plaintiff during a follow-up visit, and noted no difference in physical condition from the previous visit - Plaintiff was still exhibiting an inability to walk without crutches.  (Tr. 164).  A physical examination also yielded results similar to the previous visit, including "a good range of motion with some

---

[3] Avascular necrosis - or osteonecrosis - is the death of bone tissue due to a lack of blood supply. This can lead to tiny breaks in the bone and the bone's eventual collapse. Avascular necrosis most often affects the head of the thighbone (femur), causing hip pain. This condition is progressive, meaning that it gets worse over time, and the most common cause is bone fracture.  Mayo Clinic–Avascular Necrosis, http://www.mayoclinic.com (Follow "Diseases & Conditions" hyperlink; then select "Avascular Necrosis" under the alphabetical listing).

pain on internal external [sic] rotation." (Tr. 164). Dr. Lancaster also described a discussion between himself and Plaintiff:

> We have discussed at this point, now three months after [Plaintiff's] injury the fracture [sic], if this was going to heal it would have improved at this point. If he has avascular necrosis that has developed and has had a small fracture, subchondral through this, then reasonably this is not going to heal because of the avascularity and as such this is as good as he is going to get long term. We have discussed doing as much as possible with his current state to avoid heavy impact activities and to potentially obtain a job at a sitdown position.

(Tr. 161). Dr. Lancaster also indicated on September 17, 2003 that the possibility of undergoing a total hip replacement was remote due to Plaintiff's financial situation, and that any further extension of Plaintiff's disability would be deferred to his primary care physician if his condition was going to be a chronic non-surgical problem. (Tr. 161).

Plaintiff then returned to the care of Dr. Czerkawski on October 22, 2003. (Tr. 173). Dr. Czerkawski opined "to a reasonable degree of medical certainty I do believe that the MVA [motor vehicle accident] has aggravated an ongoing process of avascular necrosis" of the left hip. (Tr. 173). Dr. Czerkawski indicated some uncertainty as to whether the avascular necrosis was the product of diabetes or a congenital defect, but related that the accident was certainly a "major contributing cause." (Tr. 173). He also indicated Plaintiff was unable to squat with the left hip externally rotated, and that the area from the left hip to the buttock area was tender. (Tr. 173).

On December 10, 2003, Dr. Czerkawski saw Plaintiff for his final visit. (Tr. 171). He noted Plaintiff complained of discomfort in his left hip, and that hip replacement

surgery was being scheduled with Dr. Lancaster.  (Tr. 171).  Dr. Czerkawski also

indicated that there was no real numbness, tingling or saddle anesthesia, and Plaintiff's

gait, station and stance were normal.  (Tr. 171).

Plaintiff presented to Dr. McCormick on October 27, 2004 for a consultative

examination in which he noted there was no tenderness associated with Plaintiff's hip

and no swelling.  (Tr. 193).  However, according to Dr. McCormick's report, Plaintiff did

complain of some tenderness to palpation in the left inguinal area.  (Tr. 193).  Plaintiff

also complained of "pain pointing in the groin area" and some weakness in the left leg,

which he attributed to his necrotic hip.  (Tr. 191).  Additionally, Dr. McCormick noticed

that Plaintiff had a "bouncy type limp particularly on the left leg," but reported no

associated joint restriction.  (Tr. 192-93).

On November 24, 2004, Dr. Marrenzini completed a Physical Residual Functional

Capacity Assessment as a non-examining consultative physician. (Tr. 205).  After

reviewing the evidence, Dr. Marrenzini found Plaintiff was able to lift 50 pounds

occasionally, lift 25 pounds frequently, sit about 6 hours in an 8-hour workday, stand

and/or walk about 6 hours in an 8-hour workday, and push/pull commensurate with the

limitations for lifting and carrying.  (Tr. 199).  Dr. Marrenzini also noted Plaintiff's

symptoms were attributable to a medically determinable impairment, and the "severity of

the symptoms is consistent with the MER [medical evidence of record]."  (Tr. 203).

Several reports from Shands Hospital-Jacksonville also speak to Plaintiff's

medical history of degenerative disease.  For instance, medical records from January

19, 2006 recognize "[s]evere degenerative arthritis left hip with underlying grade 5

avascular necrosis."  (Tr. 238).  Further, Dr. Jadhav - a physician at Shands - noted

6

Plaintiff "is keen to work as soon as possible and hence begs for the surgery to be done as soon as possible because the pain and restriction of movement is limiting his ability to work as a cook."  (Tr. 214).  In the same Clinic Progress Note, Dr. Jadhav reported: "[T]he pain has progressively increased over the last 2-1/2 years [since the auto accident] and now has reached a severity of 8-10 / 10. . . . It is on and off, more in the evening than morning and it increases with activity and it is relieved to some extent by rest."  (Tr. 213).

During the Oral Hearing on May 9, 2007, Plaintiff submitted a Physical Residual Capacity Questionnaire completed by Dr. Czerkawski reflecting avascular necrosis of the left hip and a "poor" prognosis.  (Tr. 241).  Dr. Czerkawkski characterized Plaintiff's pain as "severe" upon sitting, standing or walking, and noted a generally poor response to his drug regimen, with only "some improvement" on narcotics.  (Tr. 241).  Dr. Czerkawski also opined Plaintiff's infirmities would "constantly" interfere with the attention and concentration associated with even simple work tasks, and estimated Plaintiff could walk one block without rest or severe pain.  (Tr. 242).  Further, Plaintiff could only sit for twenty minutes and stand for five minutes before needing to change positions.  (Tr. 242).  According to Dr. Czerkawski, these limitations would entail taking unscheduled breaks in a work environment approximately every hour, and would preclude Plaintiff from lifting and carrying articles of less than ten pounds in a competitive work situation.  (Tr. 243).

### ii.    Plaintiff's Testimony

At a hearing on May 9, 2007, the ALJ questioned Plaintiff on a number of issues including his work experience, financial status, and health.  (Tr. 249).  During this

hearing, Plaintiff described his limitations with respect to activities of daily living, his capacity for sustained work activity, and the physical limitations imposed by his alleged infirmities.  Specifically, Plaintiff cited his necrotic hip as the primary source of pain and incapacitation.  (Tr. 262).  Plaintiff claims that his left hip "causes a lot of pain and weakness," in addition to a combination of shooting pains, aches, cramps, and muscle atrophy.  He states that this pain is persistent in that "[i]t hurts most of the time," and limits him to the extent that even attempting to walk three to four blocks causes him to limp badly.   (Tr. 262).  Plaintiff reported using medication to treat his pain (Lortab), but claimed it produced undesirable side effects - itching and irritability - and often several pills were required to effectively mitigate the pain.  (Tr. 262).  Plaintiff also reports trying other methods to relieve his symptoms, including soaking in a hot tub and using a heating pad, but claims that nothing seems to really work: "If the hip wants to hurt, it's going to hurt."  (Tr. 263).

With respect to his activities of daily living, Plaintiff suggested any real participation in sports or hobbies is extremely limited or impossible, and even a thirty to forty minute ride in the car incapacitates him to the extent that he is unable to walk any significant distance afterwards.  (Tr. 264-65).  Although Plaintiff was able to do some basic work around the house, he claimed that his ability to "help out" was significantly limited by the pain emanating from his hip.  (Tr. 266).  He also told the ALJ his condition was unlikely to change until a hip replacement surgery could be performed.  (Tr. 265-66).

### C.   Summary of the ALJ's Decision

A plaintiff is entitled to disability benefits when he is unable to engage in

substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months.  42 U.S.C. §§ 416(I), 423(d)(1)(A); 20 C.F.R. § 416.905 (2007).[4]  The ALJ must follow five steps in evaluating a claim of disability.  <u>See</u> 20 C.F.R. § 416.920.  First, if a claimant is working at a substantial gainful activity, he is not disabled.  20 C.F.R. § 416.920(4)(I).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.  20 C.F.R. § 416.920(4)(ii).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, he is disabled.  20 C.F.R. § 416.920(4)(iii).  Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled.  20 C.F.R. § 416.920(4)(iv).  Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled.  20 C.F.R. § 416.920(4)(v).  Plaintiff bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner.  <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146, 107 S.Ct. 2287 n.5 (1987).

In the instant case, the ALJ found the "claimant has not engaged in substantial gainful activity at any time relevant to this decision" in reference to step one of the

---

[4] All subsequent references to the Code of Federal Regulations will be to the 2007 edition.

9

evaluation process.[5]  (Tr. 20).  The ALJ further recognized that Plaintiff suffers from

severe avascular necrosis of the left hip and recent rotator cuff injury to the right

shoulder, but that neither of these injuries, severally or cumulatively, meet or medically

equal one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  (Tr. 20).

She then found Plaintiff had the residual functional capacity[6] to perform a range of

sedentary work, including the ability to stand and sit for half an hour maximum at a time;

occasionally stoop, balance, crawl, kneel and crouch; and an inability to climb.  (Tr. 20).

The ALJ claims to have considered all symptoms, and the extent to which these

symptoms can reasonably be accepted as consistent with the objective medical

evidence and other evidence, in accordance with the Regulations.  (Tr. 20).

The ALJ summarized the Plaintiff's testimony by stating that he has left hip

avascular necrosis with pain and weakness following a motor vehicle accident in June

2003.  (Tr. 20).  She also stated:

> He can walk 3-4 blocks and he has pain and weakness in the left leg. He
> stated that the pain goes down his leg to his ankle. He testified he can sit
> for 15-20 minutes and then needs to get up but also noted he can drive for
> 30-40. In regards to the claimant's activities of daily living, he stated he
> takes the dogs to the dog part [sic] and tries to help around the house.
> The claimant was in jail for 60 days and 1 and ½ years ago for cocaine
> possession, but testified he has had no further issues with drug or alcohol

---

[5] Under 20 C.F.R. § 416.972, substantial gainful activity is work activity that involves
doing significant physical or mental activities. The work may be substantial even if it is less
intensive or well-paying than previous work. Gainful work activity is also usually done for pay or
profit, but may be considered gainful regardless of whether a profit is realized.

[6] The term "residual functional capacity," as defined in 20 CFR § 416.945 and Social
Security Rulings 96-8p, means the most an individual can still do after considering the effects of
physical and/or mental limitations which may affect their ability to perform work-related tasks.

10

abuse.

(Tr. 20-21).  The ALJ, however, found that despite Plaintiff's medically determinable

impairments, which could be expected to produce the symptoms alleged, the Plaintiff's

statements concerning the "intensity, duration and limiting effects of these symptoms are

not entirely credible."  (Tr. 21).

The ALJ then summarized the Plaintiff's overall medical situation starting with the

motor vehicle accident on June 6, 2003.  (Tr. 21).  She pointed out Plaintiff was a

restrained driver who was rear-ended after stopping at an intersection.  (Tr. 21).

Subsequent to the collision, Plaintiff developed some acute lower back and hip pain, and

sought treatment at the emergency room.  (Tr. 21).  Further, the Plaintiff underwent x-

rays, which were negative with respect to fracture, and had an MRI which showed

"extensive edema in the femoral head, neck and intratrochanteric region with a large size

hip joint effusion and findings compatible with an avascular necrosis of the femoral head

with a possible post traumatic subchondral fracture."  (Tr. 21).  She also pointed out

Plaintiff's physician opined that the aforementioned accident probably exacerbated an

existing process of avascular necrosis of the left hip.  (Tr. 21).

The ALJ next discussed Plaintiff's claims of pain, and found Plaintiff has had

significant pain since the accident with difficulty bearing weight comfortably.  (Tr. 21).

Further, the ALJ pointed to Dr. Lancaster's statement that Plaintiff's hip was "as good as

it was going to get long term," and Plaintiff should avoid heavy impact activities and

"potentially obtain a job which was a sit down position."  (Tr. 21).  Otherwise, Dr.

Lancaster recommended a hip replacement, and subsequently placed Plaintiff at

maximum medical improvement ("MMI") and released him from his care.  (Tr. 21).

11

The ALJ acknowledged that an MRI taken on July 12, 2005 showed grade 4 avascular necrosis of the left femoral head, and x-rays of the left hip showed severe degenerative arthritis with underlying grade 5 avascular necrosis on January 19, 2006. (Tr. 21).  As a result, Plaintiff's treating physician recommended total hip arthroplasty. (Tr. 21).  The ALJ noted that Plaintiff has elected to undergo surgery pursuant to the physician's recommendation, and the surgery is pending.  (Tr. 21).

The ALJ then addressed the opinion evidence of Dr. Czerkawski given on May 8, 2006.  (Tr. 21).  The ALJ stated:

> Dr. Czerkawski indicated that, due to the claimant's avascular necrosis of
> the left hip, the claimant could sit, stand, and walk less than 2 hours in an
> eight-hour day and could never lift or carry an amount of even less than 10
> pounds. He stated that the claimant could sit for no more than 20 minutes a
> time [sic]; could stand for no more than 5 minutes at a time, and could only
> walk 0-1 city blocks without pain.

(Tr. 21).

The ALJ recognized that under 20 C.F.R. § 404.1527(a)[7], treating sources are important sources of medical evidence and that their opinions are entitled to special significance.  (Tr. 21).  Indeed, the ALJ stated that sometimes these medical opinions are entitled to controlling weight.  (Tr. 21).  However, the ALJ also emphasized that it is error to give an opinion controlling weight simply because it is the opinion of the treating physician if it is unsupported by medically acceptable clinical and laboratory diagnostic

---

[7] Notably, the ALJ cites both 20 C.F.R. §§ 404 and 416 in her decision. Although Plaintiff's claim is only for Supplemental Security Income - and should be governed exclusively by 20 C.F.R. § 416 - the language used in these two sections is identical with respect to the relevant legal issues before the Court. Both sections apply the same standards and principles, and, therefore, any reference to § 404 is tantamount to a mere clerical inconsistency.

techniques or if it is inconsistent with the other substantial evidence in the case record. (Tr. 22).

As such, the ALJ stated that Dr. Czerkawski "had a limited treating relationship with Plaintiff of only four months" spanning from June 16, 2003 to December 10, 2003, and that she did not feel as though the objective medical evidence supported the extent of the limitations assessed by Dr. Czerkawski.  (Tr. 22).  The ALJ opined Dr. Czerkawski's opinion regarding Plaintiff's ability to perform work-related activities is "not well supported and is inconsistent with the other substantial evidence of record, it is given minimal evidentiary weight under the provisions of 20 C.F.R. § 404.1527(d)."[8]  (Tr. 22).

Finally, the ALJ considered the reports of the State Agency medical consultants, but was unpersuaded by their opinions because "they did not have the benefit of actually examining the claimant or considering the record in its entirety."  (Tr. 22).  Based on all of the evidence, the ALJ found that Plaintiff has the ability to perform sedentary work as follows: "the claimant can lift 10 pounds occasionally and less than 10 pounds frequently, sit and stand for periods of ½ hour maximum at a time, occasionally stoop, balance, kneel, crouch, and crawl and cannot climb."  (Tr. 22).  Therefore, the ALJ found that Plaintiff is unable to perform any past relevant work.  (Tr. 22).  Specifically, the ALJ noted Plaintiff's past relevant work as a hot dog vendor, stores laborer, and pizza baker are identified as medium and unskilled to skilled in nature - meaning Plaintiff is unable to perform these duties.  (Tr. 22).  The ALJ also found that transferability of job skills is not

---

[8] See 20 C.F.R. § 416.927(d).

an issue due to claimant's age, and there are jobs that exist in significant numbers in the national economy that he can perform.  (Tr. 22).

## III.    ANALYSIS

### A.    The Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence.  Richardson v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual

14

findings).

**B.    Arguments**

Plaintiff asserts the ALJ erred by (1) failing to properly evaluate Plaintiff's own testimony and credibility, and (2) failing to appropriately evaluate the findings and opinions of Dr. Czerkawski, Plaintiff's treating physician.  With respect to the first issue, Plaintiff specifically asserts the ALJ failed to apply the appropriate legal standard for evaluating subjective claims of pain.  Regarding the second issue, Plaintiff maintains the ALJ failed to follow the applicable Regulations and case law by giving Dr. Czerkawski's opinion "minimal" weight.

The Commissioner contends the ALJ's credibility determination concerning Plaintiff's subjective claims was supported by substantial evidence and Dr. Czerkawski's medical opinion was afforded the appropriate weight.

**i.     Whether the ALJ properly addressed Plaintiff's  testimony and credibility with respect to a subjective claim of disabling pain.**

It is well-settled that a claimant's subjective claim of pain supported by medical evidence that satisfies the "pain standard" is sufficient to support a finding of disability; indeed, pain alone can be disabling even when unsupported by objective medical evidence.  Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992); Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991).  The burden is on Plaintiff to show his pain is of such intensity and persistence that it precludes any substantial gainful activity, and there must be evidence of some medically determinable impairment.  20 C.F.R. § 416.929(b).  The Eleventh Circuit has set forth a three-part test ("Foote Test") when a Plaintiff raises pain as a contributing factor to his disability.  Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir.

1995).  Under Foote, the ALJ should consider subjective claims of pain where Plaintiff

has demonstrated:

1.    Evidence of an underlying medical condition, and **either:**
2.    Objective medical evidence that confirms the severity of the alleged pain
      arising from that condition; or
3.    That the objectively determined medical condition is of such a severity that
      it can be reasonably expected to give rise to the alleged pain.

Foote, 67 F.3d at 1560; Holt, 921 F.2d at 1223.  In applying the Foote Test, the ALJ

should consider "all evidence about the intensity, persistence, and functionally limiting

effects of pain . . . in addition to the medical signs and laboratory findings."  Foote, 67

F.3d at 1561.

In the instant case, Plaintiff was suffering from a medically determinable

impairment (progressive avascular necrosis), which was corroborated by extensive

medical evidence and uncontroverted by the Commissioner.  (Tr. 21).  In fact, the ALJ

recognized that Plaintiff "has avascular necrosis that was discovered incidentally after a

motor vehicle accident," and his impairments "could reasonably be expected to produce

the alleged symptoms."  (Tr. 21).  However, the ALJ also found "the claimant's

statements concerning the intensity, duration and limiting effects of these symptoms are

not entirely credible."  (Tr. 21).

The ALJ's treatment of Plaintiff's subjective claim of pain is troubling in several

respects.  As outlined above, in order to evaluate any subjective symptoms which

contribute to a claimant's alleged disability, the ALJ must either apply the Foote Test or

use language in her analysis which makes it abundantly clear to the reviewing court that

the correct standard was applied.  Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir.

2002).  In doing so, it is not necessary to "cite or refer to the language of the three-part

test" if the ALJ's "findings and discussion indicate that the standard was applied."  Id.  In

the instant case, the ALJ fails to directly reference the Foote Test or the portion of the

Regulations that deals with subjective symptoms, but does assert: "[C]laimant's

medically determinable impairments could reasonably be expected to produce the

alleged symptoms."  (Tr. 21).  This language is consistent with parts one and three of the

Foote Test – suggesting that the appropriate standard was applied – and satisfies the

"pain standard" on its face.  Geiger v. Apfel, No. 99-CV-12-ORL-18B, 2000 WL 381920

(M.D. Fla. Feb. 9 2000) ("As set forth above, and acknowledged by the ALJ, Plaintiff has

'medically determinable conditions that can produce the symptoms he alleges.'  This

finding, on its face, meets prongs one and three of the pain standard.") (internal citations

omitted).  Having satisfied the "pain standard," Plaintiff's subjective claims must be taken

as true unless the ALJ properly discredits his credibility.  Holt, 921 F.2d at 1223.

In order to discount Plaintiff's testimony on the basis of credibility, the Eleventh

Circuit requires the ALJ to "articulate explicit and adequate reasons for doing so."

Cannon v. Bowen, 858 F.2d 1541, 1545 (11th Cir. 1988) (citing Hale v. Bowen, 831 F.2d

1007, 1011-12 (11th Cir. 1987).  While it is certainly within the ALJ's discretionary power

to discredit Plaintiff's subjective claims, that power is limited by the duty to clearly specify

what evidence supports her conclusion.  Holt, 921 F.2d at 1223.  The ALJ failed to do so

in this case, and the undersigned finds no substantial evidence which suggests Plaintiff

was "not entirely credible."  (Tr. 21).  Presumably, the ALJ found Plaintiff was forthright in

most respects, but exaggerated his limitations regarding the "intensity" and "duration" of

his pain.[9]  (Tr. 21).  However, the ALJ provides no explicit reasons as to why she was

willing to credit some aspects of his testimony, but not others.  Therefore, the ALJ did not

meet her burden of clearly articulating the specific reasons for impugning Plaintiff's

credibility.  Because this omission resulted in a misapplication of the Eleventh Circuit's

three-part "pain standard," and because pain is a material aspect of Plaintiff's alleged

disability, the undersigned is compelled to remand the case for a proper evaluation of

Plaintiff's subjective symptoms.  Cannon, 858 F.2d at1545.  On remand, the ALJ should

reconsider Plaintiff's pain allegations and provide explicit and specific reasons should

she choose to discredit Plaintiff's testimony.

### ii.    Whether the ALJ appropriately evaluated the findings and opinions of Dr. Czerkawski, Plaintiff's treating physician.

It is clearly established that a treating physician's opinion will be granted

controlling weight if it is consistent with other medical evidence and is well-supported by

acceptable clinical and diagnostic techniques.  20 C.F.R. § 416.927(d)(2).  Treating

physicians are granted such deference because they are most able to provide a detailed,

longitudinal picture of the patient's medical status.  Id.  However, where some medical

evidence is found to be inconsistent with the treating physician's opinion, the ALJ should

give that opinion "substantial or considerable" weight unless "good cause" is shown to

the contrary.  Lewis v. Callahan, 125 F.3d 1436, 1140 (11th Cir. 1997); accord 20 C.F.R.

§ 416.927(d)(2).

---

[9] Although the Commissioner cited several reasons which could have contributed to the ALJ's finding that Plaintiff was not entirely credible, the ALJ failed to directly reference any specific evidence in her decision. Therefore, any attempt on the part of this Court to determine what might have figured into the ALJ's calculus would be mere speculation.

The Eleventh Circuit has found "good cause" to exist where: (1) the opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the opinion was conclusory or inconsistent with the doctor's own medical records.  Wright v. Barnhart, 153 F. App'x 678, 684 (11th Cir. 2005).  Further, if the ALJ decides to grant less than substantial or considerable weight to a treating physician's opinion, she must clearly articulate the reasons for doing so.  MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986).  Failure to comply with this regulation is reversible error.  Id.

In the instant case, the ALJ recognized the utility and importance of treating physicians as sources of medical evidence, and noted that their opinions "about the nature and severity of an individual's impairments are entitled to special significance." (Tr. 21).  The ALJ also pointed out that sometimes the medical opinions of treating sources are entitled to controlling weight.  (Tr. 21).  However, the ALJ found Dr. Czerkawski's opinion was entitled to only "minimal evidentiary weight under the provisions of 20 C.F.R. 404.1527(d)."[10]  (Tr. 22).  In making this determination, the ALJ cited three specific problems with Dr. Czerkawski's opinion: a limited treating relationship with Plaintiff; inconsistency with other substantial evidence of record; and conclusions which are generally unsupported by the record.  (Tr. 22).

The ALJ's initial reason for discounting the medical opinion of Dr. Czerkawski is "a limited treating relationship with the claimant of only four months from June 16, 2003 to December 10, 2003."  (Tr. 22).  As noted above, Eleventh Circuit jurisprudence requires that a treating physician's opinion be granted considerable or substantial weight unless

---

[10] See 20 C.F.R. § 416.927(d).

"good cause" is shown to the contrary.  MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th

Cir. 1986).  While the length of the treating relationship is certainly relevant, and is rightly

considered under the Regulations, it is a factor for making more nuanced determinations

as to the quality of the medical opinion offered, and cannot be used to circumvent the

"good cause" requirement.  Lewis v. Callahan, 125 F.3d 1436, 1140 (11th Cir. 1997); see

also 20 C.F.R. § 416.927(d)(2)(I).  The ALJ only considers this factor after determining

the physician's opinion is not entitled to controlling weight, and must further assess the

value of the opinion in relation to other inconsistent evidence.  See 20 C.F.R. §

416.927(d)(2)(I).  However, if the relationship between the physician and the patient is so

brief or inconsequential that it may not rightly be characterized as a "treating

relationship," then the ALJ would not be held to the "good cause" standard.  See Casher

v. Halter, 2001 WL 394921 at *13 (S.D. Ala. Mar. 29, 2001) ("If [the medical source] is

not a treating physician, then there is no presumption that his opinion should be given

controlling weight.").

    In the instant case, the relationship between Plaintiff and Dr. Czerkawski does

constitute a substantial treating relationship.  See Cronon v. Barnhart, 244 F. Supp. 2d

1286, 1293 n. 21 (N.D. Ala. 2003) (finding that since the orthopedist had examined the

patient three times he qualified as a treating physician).  In fact, the Commissioner does

not argue otherwise.  (Doc. 18, p.7).  Dr. Czerkawski saw Plaintiff pursuant to a referral

from another physician and conducted exhaustive diagnostic tests, initiated a treatment

plan, collaborated with other specialists, and made findings largely consistent with the

other medical evidence of record.  He did so over the course of four visits - all of which

included meticulous diagnostic notes - and there is no evidence to suggest that the

relationship between Plaintiff and Dr. Czerkawski deviated in any way from accepted medical practice.  Because Dr. Czerkawski is clearly a treating physician under the Regulations and Eleventh Circuit case law, his opinion is entitled to deferential treatment, and "the length of the treating relationship" serves as no basis for according his opinion "minimal evidentiary value."  (Tr. 21).

The ALJ also claims Dr. Czerkawski's opinion is inconsistent with other medical evidence of record and unsupported by the evidence itself.  (Tr. 22).  Although these claims use the triggering language for the "good cause" exception, they remain unsubstantiated by any specific evidence, and provide the reviewing Court with little guidance in determining whether the findings are supported by substantial evidence. While it is incumbent upon this Court to "view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision" to ascertain whether the ALJ's decision is based on substantial evidence, it is also important to refrain from re-weighing the evidence.  Chester v. Bowen, 792 F.2d 129, 131 (11th Cir.1986).  Therefore, the ALJ should reconsider Dr. Czerkawski's opinion on remand in accordance with this Order, taking care to clearly articulate her reasons should she find his opinion is not entitled to controlling weight.  Further, the ALJ should identify any evidence she feels is inconsistent with Dr. Czerkawski's opinion and specify which elements of his opinion remain unsupported by the record.

## IV.    CONCLUSION

For the reasons stated herein, the Clerk of the Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) **REVERSING** the Commissioner's

decision and **REMANDING** the matter to the ALJ with instructions to: (1) reevaluate Dr. Czerkawski's opinion, making sure to clearly articulate any reasons for giving his opinion less than controlling weight, in accordance with this Order; (2) reexamine Plaintiff's subjective claims of pain, making sure to provide explicit and specific reasons should she choose to discredit Plaintiff's testimony; (3) reevaluate Plaintiff's residual functional capacity in accordance with the guidelines set forth in 20 C.F.R. § 416.927(d); (4) consult a vocational expert if necessary; and (5) conduct any other proceedings deemed appropriate.

**DONE AND ORDERED** at Jacksonville, Florida, this __4th__ day of January, 2008.


_Monte C. Richardson_

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE


Copies to:

Counsel of Record